JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, Rodney Delaboin, appeals his conviction from the Cuyahoga County Court of Common Pleas. Finding no error in the proceedings below, we affirm.
 {¶ 2} Delaboin was charged with one count of trafficking crack cocaine, a felony of the second degree; one count of trafficking MDMA, a felony of the fourth degree; one count of possession of crack cocaine, a felony of the second degree; one count of possession of MDMA, a felony of the fifth degree; one count of tampering with evidence, a felony of the third degree; and one count of possession of criminal tools (cell phone and money), a felony of the fifth degree. Delaboin pled not guilty, and a jury trial ensued.
 {¶ 3} The evidence revealed that on December 20, 2006, Delaboin was a passenger in Marsha Rucker's Chevy Tahoe SUV. Rucker testified that she has known Delaboin since high school. She stated that he flagged her down when she was leaving her mother's home in Cleveland. He got into her SUV and asked her if she wanted to take an ecstasy pill with him. Rucker testified that she said yes but that she wanted to eat something first. They headed to Red Lobster.
 {¶ 4} While driving southbound on Interstate 271, Rucker noticed a police car driving behind her. She testified that it activated its lights and that, knowing she had two active warrants, she began to pull over. Rucker stated that Delaboin told her to keep going, so she did. She testified that Delaboin then began throwing what she *Page 2 
thought were the ecstasy pills out of the window. Rucker denied throwing anything out of her window. Rucker testified that the chase ended when the police cruiser hit her SUV from the side.
 {¶ 5} Officer Andrew Rocco from the Mayfield Heights Police Department testified that he noticed Rucker's SUV slow down as he approached it. He ran the license plate and discovered that the owner, Rucker, had a suspended license and outstanding warrants. He activated his lights and attempted to initiate a felony traffic stop. Officer Rocco testified that initially Rucker slowed down and started to pull over, but then she sped up and took off. Officer Rocco followed and saw objects being thrown from both sides of the vehicle. He notified dispatch and requested that other officers try to recover what was being discarded from the vehicle, which he suspected to be drugs.
 {¶ 6} Officer Gary Haba from the Beachwood Police Department recovered a bag of crack cocaine from the median of Interstate 271 in the area where the items were being discarded from the SUV.
 {¶ 7} Marilyn Tonelli, a civilian, testified that on December 20, she was driving on Interstate 271 when an SUV passed her. She noticed that the passenger was throwing "white things" out of the window. She testified that at first she thought that the motorists were just cleaning out their car, but then she realized that the items were probably drugs because the police were chasing the SUV. She reported what she saw to the police department. *Page 3 
 {¶ 8} Officer Van Snyder of Mayfield Heights Police Department testified that he attempted to assist Officer Rocco with his felony traffic stop. He followed behind Rucker and Officer Rocco and recorded the chase on his dash camera, which recording was played for the jury. Officer Snyder also witnessed items being discarded out of the window of the SUV.
 {¶ 9} Officer Rocco's patrol car struck Rucker's SUV, bringing it to a stop. Rucker and Delaboin were ordered out of the truck. Both were placed under arrest. A bag of crack cocaine and MDMA were recovered from the scene, as well as a cell phone. Also, $830 in cash was recovered from Delaboin's pocket.
 {¶ 10} Officer Snyder testified that during the booking process, Delaboin indicated that he was not employed.
 {¶ 11} Officer Rocco testified regarding the difference between drug users and drug sellers.
 {¶ 12} Delaboin was convicted on the first five counts of the indictment but not convicted on the charge of possession of criminal tools. He was sentenced to three years in prison. Delaboin appeals, advancing six assignments of error for our review. His first assignment of error states the following:
 {¶ 13} "The trial court violated appellant's rights under the Fifth and Sixth Amendments to the Constitution of the United States by allowing the State, over objection, to introduce evidence of statements made by appellant in response to questioning by police officers while appellant was in police custody." *Page 4 
 {¶ 14} Under this assignment of error, Delaboin complains that it was error to admit his response that he was unemployed, which was obtained during the booking process, allegedly without the benefit ofMiranda warnings. Delaboin argues that the state wrongfully used that statement to prove that the $830 was obtained through drug sales and that he was trafficking drugs. Delaboin argues that asking a suspect where he is employed does not fall within the "booking questions" exception to the Miranda rule.
 {¶ 15} In Miranda v. Arizona, the United States Supreme Court held that the Fifth Amendment privilege against self-incrimination prohibits admitting statements given by a suspect during "custodial interrogation" without prior warning. Miranda v. Arizona (1966), 384 U.S. 436. However, not every question in a custodial setting requires a Miranda warning.United States v. Booth (C.A. 9, 1981), 669 F.2d 1231, 1237. "Many sorts of questions do not, by their very nature, involve the psychological intimidation that Miranda is designed to prevent." Id. Routine booking questions fall within this category and are exempt fromMiranda's coverage. Pennsylvania v. Muniz (1990), 496 U.S. 582. The booking questions must be reasonably related to the administrative concerns of the law enforcement agency in order for this exemption to apply. Id. The questions must be part of the routine process normally attendant to arrest, custody, and record keeping, and not intended to elicit incriminating responses. Id. The exception for booking questions "applies to biographical questions which must be asked pursuant to established, *Page 5 
noninvestigatory booking procedures." United States v. Abell (D.Me., 1984), 586 F.Supp. 1414, 1421.
 {¶ 16} In a similar case, State v. McDew (Feb. 14, 1995), Tuscarawas App. No. 94AP070045, the defendant was charged and convicted of trafficking and possession of cocaine. During the booking process the defendant was asked where he worked, and he responded, "if I had an employer I would not have to sell crack." The Fifth Appellate District found that "the question regarding his employment was not an interrogating one designed to elicit incriminating remarks." Id. The court held that the defendant's response was voluntary and fell under the category of routine booking questions that do not requireMiranda warnings. Id. See, also, State v. Grooms (Nov. 12, 1991), Stark App. No. CA 8515.
 {¶ 17} Here, Officer Snyder testified that the city of Mayfield Heights has a booking procedure that it follows no matter the reason for the arrest. He testified: "It's a series of questions. No admission of guilt, anything of that nature, it's strictly booking. Your medical history, the explanation of what's expected of you while you're in our jail, contact information for emergency situations, employment, things of that nature." When Delaboin was booked, he indicated that he was not employed.
 {¶ 18} In this case the record established that the employment question was part of the routine process normally attendant to arrest, custody, and record keeping and was not intended to elicit incriminating responses. Nevertheless, the statement was subsequently used by the prosecution in an effort to infer that the $830 on an *Page 6 
"unemployed" person represented either the possession of criminal tools or that the person in possession of the money was a drug dealer. We decline to extend the Miranda warnings to voluntary statements made during the booking process, but we note, in any event, that Delaboin was acquitted of the possession of criminal tools. Further, there was ample evidence from the recovery of drugs on the scene to independently establish the trafficking and possession charges. We find that Delaboin's response was voluntary and fell under the category of routine booking questions that do not require Miranda warnings. Accordingly, Delaboin's first assignment of error is overruled.
 {¶ 19} Delaboin's second assignment of error states the following:
 {¶ 20} "The trial court committed plain error by allowing the state to elicit improper opinion testimony on the subject of drug use and trafficking in drugs from a patrolman whose only alleged qualification consisted of having arrested some persons in the past who he believed were `users' of crack cocaine and some persons who he believed were `dealers' of crack cocaine."
 {¶ 21} Delaboin complains that Officer Rocco was not qualified to testify regarding the difference between crack cocaine users and dealers. He argues that it was plain error to allow the officer's opinion that the 16.9 gram rock of crack cocaine recovered in this case was consistent with an amount being prepared for shipment and sale. *Page 7 
 {¶ 22} "Plain error does not exist unless it can be said that, but for the error, the outcome of the trial would clearly have been otherwise."State v. Moreland (1990), 50 Ohio St.3d 58; Crim. R. 52(B).
 {¶ 23} We agree with the defense that Officer Rocco's testimony did not establish him as an expert witness on drug trafficking. A review of the transcript, however, reveals that the state did not attempt to establish Officer Rocco as an expert witness. As testimony of a lay witness, Officer Rocco's testimony was admissible under Evid. R. 701.
 {¶ 24} Evid. R. 701 provides: "If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of his testimony or the determination of a fact in issue."
 {¶ 25} In State v. McKee, 91 Ohio St.3d 292, 2001-Ohio-41, the issue was whether a drug user could testify about the identity of drugs. The court stated the following: "Although these cases are of a technical nature in that they allow lay opinion testimony on a subject outside the realm of common knowledge, they still fall within the ambit of the rule's requirement that a lay witness's opinion be rationally based on firsthand observations and helpful in determining a fact in issue. These cases are not based on specialized knowledge within the scope of Evid. R. 702, but rather are based upon a layperson's personal knowledge and experience." *Page 8 
 {¶ 26} We find that the officer's testimony in this case also fits into this classification. In this case the officer was testifying as a lay witness, and his testimony was not based on some specialized knowledge. Officer Rocco's opinion was based on his training and experience as a police officer of seven years, which included arresting both drug users and drug dealers. Further, his testimony was helpful to determine a fact in issue. Therefore, his testimony was properly admitted under Evid. R. 701 and was not plain error. See, also, State v.Keith, Allen App. Nos. 10-06-46, 10-06-53, 2007-Ohio-4632; State v.Cooper, Cuyahoga App. No. 86437, 2006-Ohio-817. Accordingly, Delaboin's second assignment of error is overruled.
 {¶ 27} Delaboin's third assignment of error states the following:
 {¶ 28} "Appellant was denied the right to remain silent and due process of law when the prosecuting attorney commented on his failure to testify."
 {¶ 29} Delaboin asserts that he was prejudiced by the prosecutor's comment in closing argument, wherein he stated: "The defense wants it both ways, because he can't answer, he has no explanation for the fact that three witnesses have testified that stuff comes out of the passenger window." He asserts it was plain error for the court to allow the prosecutor to comment upon Delaboin's failure to testify.
 {¶ 30} It is improper for a prosecutor to comment on a defendant's failure to testify. State v. Gapen, 104 Ohio St.3d 358, 375,2004-Ohio-6548, citing Griffin v. California (1965), 380 U.S. 609, 615,85 S.Ct. 1229. In determining whether there was a violation of the defendant's Fifth Amendment rights, the court must consider *Page 9 
"`whether the language used was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify.'" State v. Webb,70 Ohio St.3d 325, 328, 1994-Ohio-425, quoting Knowles v. UnitedStates (C.A.10, 1955), 224 F.2d 168.
 {¶ 31} In this case, the prosecutor was responding to defense counsel's argument that it was the driver, not Delaboin, who was discarding drugs out of the window. The prosecutor pointed out that defense counsel could not explain why three witnesses testified that they saw items being discarded out of the passenger side, where Delaboin sat. When the prosecutor's comments are placed in the context of his overall argument, it is clear that his comments were not "manifestly intended * * * to be a comment on the failure of [Delaboin] to testify."Webb, 70 Ohio St.3d at 328. Moreover, isolated comments by a prosecutor are not to be taken out of context and given their most damaging meaning. Donnelly v. DeChristoforo (1974), 416 U.S. 637, 647,94 S.Ct. 1868. Thus, we find that the prosecutor's remark did not violate Delaboin's Fifth Amendment rights, and we overrule his third assignment of error.
 {¶ 32} Delaboin's fourth assignment of error states the following:
 {¶ 33} "Appellant was denied the right to effective assistance of counsel."
 {¶ 34} In order to substantiate a claim of ineffective assistance of counsel, the appellant is required to demonstrate that (1) the performance of defense counsel was seriously flawed and deficient and (2) the result of the appellant's trial or legal *Page 10 
proceeding would have been different had defense counsel provided proper representation. Strickland v. Washington (1984), 466 U.S. 668, State v.Brooks (1986), 25 Ohio St.3d 144. Judicial scrutiny of defense counsel's performance must be highly deferential. Strickland, 466 U.S. at 689. In Ohio, there is a presumption that a properly licensed attorney is competent. State v. Calhoun, 86 Ohio St.3d 279, 1999-Ohio-102.
 {¶ 35} Delaboin bases his ineffective assistance of counsel argument on the three previous assignments of error. He argues that his attorney was ineffective because he failed to file a motion to suppress Delaboin's statement that he was unemployed. "Failing to file a motion to suppress does not constitute ineffective assistance of counsel per se. To establish ineffective assistance of counsel for failure to file a motion to suppress, a defendant must prove that there was a basis to suppress the evidence in question." (Internal citations omitted.)State v. Brown, 115 Ohio St.3d 55, 68, 69, 2007-Ohio-4837. As we stated in the first assignment of error, Delaboin's statement was admissible under the exception for routine booking questions. Consequently, there was no basis to suppress Delaboin's statement.
 {¶ 36} Delaboin also argues that his counsel was ineffective because he failed to object to Officer Rocco's testimony and the prosecutor's argument in closing. Failure to object to error, alone, is not sufficient to sustain a claim of ineffective assistance. State v.Fears, 86 Ohio St.3d 329, 1999-Ohio-111; State v. Hicks, Cuyahoga App. No. 83931, 2004-Ohio-5223. Since we found that Officer Rocco's *Page 11 
testimony was properly admitted and that the prosecutor's comment did not violate Delaboin's Fifth Amendment rights, an objection would have been unproductive. Accordingly, we do not find that Delaboin's attorney was ineffective, and we overrule his fourth assignment of error.
 {¶ 37} Delaboin's fifth assignment of error states the following:
 {¶ 38} "The evidence was insufficient as a matter of law to support Appellant's convictions for drug trafficking."
 {¶ 39} A challenge to the sufficiency of the evidence attacks the adequacy of the evidence presented. Whether the evidence is legally sufficient to sustain a conviction is a question of law. See State v.Thompkins, 78 Ohio St.3d 380, 386, 1997-Ohio-52. The relevant inquiry in a claim of insufficiency is "`whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.'" State v. Leonard, 104 Ohio St.3d 54, 67,2004-Ohio-6235, quoting State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 40} Delaboin argues that the evidence was insufficient to support a conviction for preparation of drugs for sale. He cites to State v.Marlin, Cuyahoga App. No. 84399, 2005-Ohio-3691, wherein this court vacated the defendant's conviction for preparation of drugs for sale because there was no evidence in the record to support that he intended to sell or resell the drugs. *Page 12 
 {¶ 41} R.C. 2925.03 states the following: "(A) No person shall knowingly do any of the following: * * *(2) Prepare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance, when the offender knows or has reasonable cause to believe that the controlled substance is intended for sale or resale by the offender or another person."
 {¶ 42} In this case the testimony established that Delaboin was unemployed, yet he had $830 in cash in small denominations on his person when he was arrested, which suggests drug trafficking. Further, a large rock of crack cocaine, weighing 16.9 grams, was located near Delaboin after the crash. Unlike Martin, here there was evidence in the record that a rock of crack cocaine that size was indicative of a dealer of drugs and not a user. Also, eight tablets of MDMA,"ecstasy," were recovered. We find that after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt. Accordingly, Delaboin's fifth assignment of error is overruled.
 {¶ 43} Delaboin's sixth assignment of error states the following:
 {¶ 44} "The verdicts were against the manifest weight of the evidence."
 {¶ 45} Delaboin argues that his convictions are against the manifest weight of the evidence because Rucker's testimony is not credible. Specifically, he argues that she is a convicted felon, who received a "sweetheart" deal in exchange for her testimony in this case and, therefore, is not a reliable witness. *Page 13 
 {¶ 46} In reviewing a claim challenging the manifest weight of the evidence, the question to be answered is whether "there is substantial evidence upon which a jury could reasonably conclude that all the elements have been proved beyond a reasonable doubt. In conducting this review, we must examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." (Internal quotes and citations omitted.) State v.Leonard, 104 Ohio St.3d 54, 68, 2004-Ohio-6235.
 {¶ 47} In this case, Rucker testified that she began to pull over after the police car activated its overhead lights, but Delaboin told her to keep going. Officer Rocco testified that he attempted to pull over Rucker's vehicle and that he observed her starting to slow down and pull over and then speed up and pull away, which is consistent with Rucker's testimony. Rucker testified that Delaboin began throwing the drugs out of the window. Officer Rocco, Officer Snyder, and Tonelli all corroborated Rucker's testimony, testifying that they observed things being thrown from the passenger window. Crack cocaine was recovered from the side of the road by Officer Haba. Further, crack cocaine and MDMA were recovered at the scene of the accident. We find that the jury did not lose its way and that Delaboin's convictions for trafficking and possession of drugs are not against the manifest weight of the evidence. Delaboin's sixth assignment of error is overruled. *Page 14 
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 JAMES J. SWEENEY, A.J., and MARY J. BOYLE, J., CONCUR. *Page 1