[Cite as *State v. Wilkinson*, 2014-Ohio-5791.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No. 100859

**STATE OF OHIO**

PLAINTIFF-APPELLEE

vs.

**CARLIA C. WILKINSON**

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-13-573185-A

**BEFORE:** Keough, P.J., McCormack, J., and E.T. Gallagher, J.

**RELEASED AND JOURNALIZED:** December 31, 2014

**ATTORNEY FOR APPELLANT**

Susan J. Moran
55 Public Square, Suite 1616
Cleveland, Ohio 44113

**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
By: Fallon Radigan
    Carl Mazzone
Assistant Prosecuting Attorneys
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

KATHLEEN ANN KEOUGH, P.J.:

{¶1} Defendant-appellant, Carlia Wilkinson, appeals her convictions. For the reasons that follow, we affirm.

{¶2} In 2013, Wilkinson was charged with one count each of drug trafficking, drug possession, and possessing criminal tools in connection with a controlled delivery of a package containing marijuana. The matter proceeded to trial where the jury heard the following evidence.

{¶3} Postal inspector Bryon Green testified that he is employed with the postal inspection service that investigates packages delivered by USPS that have indicators of drug trafficking. According to Green, indicators include packages that are shipped overnight from target source areas for narcotics including California, Arizona, and Texas, packages containing handwritten labels, and excessive shipping costs paid in cash. Once a package containing these indicators is flagged, a search is done through a database to determine whether the sender or recipient's name is associated with the addresses listed. Once it is revealed that the sender or recipient are fictitious, a canine trained to detect the odor of illegal narcotics is used to see if the canine will "alert" to the package. If the canine alerts, a search warrant is obtained to open the package, and if suspected illegal narcotics are found in the package, the contents are photographed, field tested, and weighed. Once the presence of illegal narcotics is verified, the package is either seized or a detection device is placed inside the package and a controlled delivery is conducted.

{¶4} Green testified that he was working in his capacity at the USPS on April 3, 2013, inspecting suspicious packages. He testified that he identified two identical large parcels shipped from Texas going to different addresses in the 44102 zip code — Neville Avenue and West 99th Street. He further testified that he suspected that these parcels contained narcotics because both packages were sent overnight with over $90 in paid postage, they contained

handwritten labels, the sender and receiver each shared the same last name, and after a search of the names in the database, the names associated with the addresses listed were fictitious. Relevant to this appeal, the recipient of the Neville Avenue parcel was "Brandon Wilkson." After flagging the two parcels, Green contacted Cleveland police.

{¶5} Detective Patrick Andrejcak testified that he works in the drug interdiction unit with K-9 patrol and does drug investigations using a narcotics dog. He testified that he was contacted to investigate two suspicious packages. He brought his canine partner, Daisy, into a room filled with packages. Daisy alerted to the Neville Avenue package. This same procedure was followed when investigating the other parcel addressed to the West 99th Street address.

{¶6} Based on the physical indicators, the database revelations, and the canine alert, Inspector Green obtained a search warrant to open both parcels. Inside each parcel, he discovered a red bucket wrapped in green cellophane containing nearly ten pounds of suspected marijuana. The contents of both parcels field tested positive for marijuana.

{¶7} After photographing the contents of the parcels, the officers placed a detection device, which would indicate when the parcel was opened inside the Neville Avenue parcel. The package was resealed, and it was sent out for a controlled delivery. Additionally, based on the contents, the officers obtained an anticipatory search warrant, which would allow them to enter the Neville Avenue residence once the detection device indicated the package was opened.

{¶8} Inspector Green, dressed as a postal worker, delivered the package to the Neville address with the assistance of the Cleveland police who provided surveillance. Inspector Green knocked on the door, and Wilkinson came out from the backyard. While presenting the address slip facing up toward Wilkinson, Green asked if "Brandon Wilkson" lived or received mail there, and according to Green, Wilkinson answered "yes." Wilkinson accepted the package and,

using the top of the box near the address label, signed an illegible signature on the receipt card. The parcel was delivered at approximately 2:11 p.m.

{¶9} Officer John Cline, a tech officer in the narcotics division, was monitoring the detection device that was placed in the parcel. He testified that approximately five minutes after being advised that the parcel was delivered, he received a signal from his transmitter that the parcel had been opened. He relayed the information to fellow officers to execute the anticipatory search warrant. Officer Cline entered the Neville residence and saw the parcel on the kitchen floor with the box flaps open revealing the bucket. He stated he could not see inside the bucket.

{¶10} Inspector Green returned to the house after the package was opened and observed the open parcel on the kitchen floor with the bucket still inside the box. He could not recall whether the package was still intact from the way it was repackaged, but the marijuana was not removed from the bucket. Green testified that after Wilkinson was Mirandized, she denied knowing anything about the parcel, its contents, and anyone named "Brandon Wilkson."

{¶11} Homeland Security Special Agent Patrick Donlin testified that he was a member of the team that entered the Neville residence to execute the search warrant. He testified that the package was opened at 2:14 p.m. He further testified that he interviewed Wilkinson with Detective Andrejcak at the police station where Wilkinson admitted to accepting the parcel, but denied knowing the contents inside the parcel. Once they told her about the contents of the package, Wilkinson stated that the package was for Marcus, whom she described as a friend since 2007. According to Donlin, Wilkinson further admitted that on two previous occasions she allowed Marcus to receive packages at her residence. She told Donlin that the first time a package was delivered for Marcus, the package was just left at her house and Marcus picked it up

on his own. The second time, she received the package and Marcus picked it up from her. Donlin testified that Wilkinson denied knowing if Marcus was a drug dealer. The identity of Marcus was never revealed or discovered.

{¶12} At the officer's request, Wilkinson placed a phone call to Marcus to see if he would make any admissions about the parcel. However, Marcus denied any knowledge about the parcel, was evasive, and hung up on Wilkinson. Wilkinson's cell phone records indicated that she spoke with Marcus the night before the parcel was delivered and that several short-worded text messages were sent throughout the day, leading up to the delivery, which the state argued were discussions about the parcel being delivered. Additionally, the records revealed that minutes after the parcel was opened and the police entered the house, Marcus called Wilkinson's phone twice — 2:17 p.m. and again at 2:21 p.m.

{¶13} Wilkinson testified in her defense. She stated that she did not expect a delivery of any package to her house on April 3, 2013, and she denied knowing about the contents of the package. However, out of curiosity and upon belief that the postal worker said "Wilkinson," she accepted the package and took it inside. She testified that she opened the package without looking at the shipping label, and once she saw the black box with a blinking light inside the package, she called her mother. Moments later, the police stormed into her house, questioned her, searched her house, and arrested her. Approximately five to ten minutes after the police arrived, Wilkinson's mother arrived.

{¶14} Wilkinson admitted that on two prior occasions her friend Marcus asked her if he could have a package delivered to her address. She testified that the prior package was left on her porch, which Marcus retrieved on his own. She denied that a second package was

previously sent.   She testified that she linked this package with Marcus because he was the only person to ever have something sent to her house.

{¶15} When questioned about her affiliation and relationship with Marcus, her testimony became contradictory and confusing.   She stated that she went to high school with Marcus, yet did not know his last name.   She stated that he was going to help her buy a car, yet she stated she was not close with him, they only hung out once or twice, and did not know what he did for a living.   She told the jury she spoke to him once in awhile, but then stated they spoke once a week.   She testified that on April 3 she was supposed to hang out with Marcus at a friend's house, which was close to her mother's residence.   But after her friends left, the plan was cancelled.   Wilkinson testified that she does not let Marcus inside her house because she had been robbed previously, yet she allowed him to have a package delivered to her house.

{¶16} Wilkinson explained to the jury that the text messages she received and sent to Marcus related to her car getting towed to her mother's house that day.   Evidence was presented that her car was towed to her mother's house.

{¶17} The state recalled Inspector Green as a rebuttal witness.   He testified about the second package flagged as suspicious on April 3, 2013, that was addressed to a fictitious recipient residing on West 99th Street.   Green testified that the defendant's mother lived at the West 99th Street address.   According to Green, when he advised the defendant's mother of this information, she appeared aggravated and angry, yelling at her daughter in an accusatory manner.

{¶18} The jury found Wilkinson guilty of all counts.   After merging the drug trafficking and drug possession counts, the trial court sentenced Wilkinson to one year of community control

sanctions, to run concurrent with a one-year community control sentence on the possessing criminal tools charge. Wilkinson's cell phone was ordered forfeited.

{¶19} Wilkinson appeals raising three assignments of error.

## I. Sufficiency of the Evidence

{¶20} The state's theory of the case was that Wilkinson acted as the "middleman" or "mule" in this transaction — accepting the package from the sender with the intent of forwarding the package on to the seller. Wilkinson's defense at trial and on appeal is that she merely accepted the package and had no knowledge of the contents. Accordingly, in her first assignment of error, Wilkinson contends that the state failed to present sufficient evidence of the offenses charged.

{¶21} The test for sufficiency requires a determination of whether the prosecution met its burden of production at trial. *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 12. An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). Additionally, when reviewing the sufficiency of the evidence, an appellate court is to consider all of the evidence admitted at trial, even if the evidence was improperly admitted. *State v. Brewer*, 121 Ohio St.3d 202, 2009-Ohio-593, 903 N.E.2d 284, ¶19.

{¶22} It is well established that "'circumstantial evidence is sufficient to sustain a conviction if the evidence would convince the average mind of the defendant's guilt beyond a

reasonable doubt.'" *State v. McKnight*, 107 Ohio St.3d 101, 2005-Ohio-6046, 837 N.E.2d 315, ¶ 75, quoting *State v. Heinish*, 50 Ohio St.3d 231, 238, 553 N.E.2d 1026 (1990). Circumstantial evidence carries the same weight as direct evidence. *State v. Jenks*, 61 Ohio St.3d 259, 272, 574 N.E.2d 492 (1991). Circumstantial evidence is proof of facts or circumstances by direct evidence from which the trier of fact may reasonably infer other related or connected facts that naturally or logically follow. *State v. Beynum*, 8th Dist.Cuyahoga No. 69206, 1996 Ohio App. LEXIS 2143 (May 23, 1996).

A. Drug Trafficking and Possession

{¶23} In Count 1, Wilkinson was charged with drug trafficking in violation of R.C. 2925.03(A)(2). The jury was instructed that Wilkinson "knowingly shipped, transported and/or delivered a controlled substance when she knows or has reasonable cause to believe that the controlled substance was intended for sale or resale by the Defendant or another person." In Count 2, Wilkinson was charged with drug possession in violation of R.C. 2925.11(A), which prohibits a person from knowingly obtaining, possessing, or using a controlled substance or a controlled substance analog. The state proceeded in this case on a theory of complicity.

{¶24} The jury was given the following instruction on a complicity:

However, the State of Ohio does not necessarily contend that [Wilkinson] directly and personally committed each of these offenses. The State contends she either personally committed one or more of the offenses or she aided and abetted a person who directly or personally committed one or more of the offenses.

A person who aids or abets in the commission of a crime is regarded as if she were the principal offender under Ohio law is as guilty as if she personally committed every act constituting the offense.

Under the laws of Ohio, however, no person can be found guilty of aiding and abetting another in committing an offense unless that person is acting with the same kind of culpability required for the commission of the offense.

> Now, by kind of culpability the law means the same mental state, be it purposely or knowingly. Aid means to help, assist, or strengthen. Abet means to encourage, counsel, incite, or assist.

(Tr. 694-695.)

**{¶25}** Wilkinson contends that because she merely accepted the package, the state failed to produce sufficient evidence to prove that she had knowledge of the existence of the marijuana inside the package in order to be convicted of drug possession or drug trafficking. "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B). In *State v. Teamer*, 82 Ohio St.3d 490, 492, 696 N.E.2d 1049 (1998), the Ohio Supreme Court held that the issue of whether a person charged with drug possession knowingly possessed, obtained, or used a controlled substance "is to be determined from all the attendant facts and circumstances available."

**{¶26}** In support of her argument, Wilkinson relies on this court's decision in *State v. Collins*, 8th Dist. Cuyahoga No. 95422, 2011-Ohio-4808, wherein this court reversed a drug trafficking conviction reasoning that "[r]eceipt of drugs alone is not one of the enumerated methods of violating the 'preparation for shipment statute.'" *Collins* at ¶ 29. In *Collins*, the defendant received two packages that both contained marijuana. The first package was delivered and accepted by Collins's brother. A short time later, Collins arrived at the house and carried the package a few houses down where he tore the shipping label off the package. The second package was delivered and accepted by Collins, himself. After taking the package inside the house, he came back out of the house and placed the package on the porch. After both of these deliveries, Collins was arrested and charged with drug trafficking in violation of R.C.

2925.03(A)(2). The state contended that Collins's actions amounted to drug trafficking on the basis that he "prepared the marijuana for distribution by delivery of the packages." This court disagreed and explained,

> Unless police can lay out the conspiracy to distribute drugs, including details on the origin of shipment, method of shipment, and parties involved in the shipment (real or otherwise), in a manner designed to prove the act of receipt is part of an overall drug conspiracy, the elements that an offender prepares a drug for shipment, or ships a drug, or transports a drug, or delivers a drug, or prepares for distribution a drug, or actually distributes a controlled substance, when the offender knows or has reasonable cause to believe that the controlled substance is intended for sale or resale by the offender or another person, are not met by evidence of receipt alone.

*Id.* at ¶ 30.

{¶27} Although *Collins* is distinguishable from the facts in this case because *Collins* analyzed the "preparation for shipment" aspect of R.C. 2925.03(A)(2), we find the analysis instructive in deciding the case against Wilkinson.

{¶28} In this case, Wilkinson was charged with shipping, distributing, or delivering the controlled substance under a complicity theory. The state presented evidence that two packages of similar size, weight, origin of shipment, and appearance were flagged at the post office. These packages both contained a similar quantity of marijuana. The senders and recipients on each package were fictitious with one package being delivered to Wilkinson's address, and the other to Wilkinson's mother's address. Finally, the state presented evidence of cryptic, short-worded text messages sent between Wilkinson and Marcus that would lead a reasonable person to infer that the subject matter pertained to the delivery of the parcel. This inference is strengthened by Wilkinson's own testimony that she previously allowed Marcus to receive packages at her house. Finally, the inference is reasonable in that she immediately opened the parcel that was not addressed to her and when she saw the blinking device, she called her mother,

who was also receiving a similar package that day.   The evidence showed that within minutes of the package being delivered and opened, Marcus had called Wilkinson twice — 2:17 p.m. and again at 2:21 p.m.

{¶29} Based on this court's criteria set forth in *Collins*, we find that the state established that Wilkinson's receipt of the parcel was part of the overall conspiracy to trafficking in drugs, and that she received the package with knowledge that it contained illegal narcotics.

{¶30} This holding is consistent with a similar case this court considered in *State v. Smith*, 8th Dist. Cuyahoga No. 67524, 1995 Ohio App. LEXIS 2464 (June 15, 1995).   In *Smith*, a controlled delivery of a package containing marijuana was addressed to and accepted by the defendant.   The defendant argued that the unopened package and lack of drug paraphernalia found in her residence established that she lacked knowledge of the contents of the package. This court found that the facts and circumstances surrounding the delivered and the contradictory testimony by the defendant, allowed the factfinder to reasonably conclude that she acted as the middleman in receiving the package containing marijuana.

{¶31} Much like in *Smith*, the state in this case proposed that Wilkinson's role was a middle person or mule in the drug operation.   This theory explained why Wilkinson did not have any items indicative of drug trafficking in her home.   Furthermore, the circumstances and facts surrounding the delivery and Wilkinson's contradictory testimony allowed the factfinder to reasonably conclude she was acting as the middleman in this transaction.

{¶32} Accordingly, viewing the evidence in the light most favorable to the state, sufficient evidence was presented to support Wilkinson's drug trafficking and drug possession convictions.

B.   Possessing Criminal Tools

{¶33} In Count 3, Wilkinson was charged with possessing criminal tools in violation of R.C. 2923.24(A), which prohibits a person from possessing or having under the person's control any substance, device, instrument, or article, with purpose to use it criminally. Specifically, the state alleged her cell phone was used as a criminal tool.

{¶34} In this case, the state presented evidence that Wilkinson used her cell phone to communicate with Marcus, the purported intended recipient of the package. The testimony and evidence demonstrated that the increased frequency of communications along with the cryptic short-worded conversation between Wilkinson and Marcus allowed the factfinder to properly infer that Wilkinson was accepting a package for Marcus on April 3, and that she was using her cell phone to further facilitate the commission of the offenses.

{¶35} Accordingly, viewing the evidence in light most favorable to the state, sufficient evidence was presented to support Wilkinson's convictions of possessing criminal tools.

{¶36} Wilkinson's first assignment of error is overruled.

## II. Manifest Weight of the Evidence

{¶37} "'A manifest weight challenge * * * questions whether the prosecution met its burden of persuasion.'" *State v. Ponce*, 8th Dist. Cuyahoga No. 91329, 2010-Ohio-1741, ¶ 17, quoting *State v. Thomas*, 70 Ohio St.2d 79, 80, 434 N.E.2d 1356 (1982). The manifest-weight-of-the-evidence standard of review requires us to review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Otten*, 33 Ohio App.3d 339, 515 N.E.2d 1009 (9th Dist.1986), paragraph one of the syllabus. The discretionary power to grant a new trial should be exercised only in

exceptional cases where the evidence weighs heavily against the conviction. *Thompkins*, 78 Ohio St.3d at 386, 678 N.E.2d 541.

{¶38} Wilkinson argues in her second assignment of error that because her credibility was not impeached, her testimony and explanation regarding the content of the text messages reveal that her convictions were against the manifest weight of the evidence. We disagree.

{¶39} Under well-settled precedent, we are constrained to adhere to the principle that the credibility of witnesses and the weight to be given to their testimony are matters for the trier of fact to resolve. *See State v. DeHass*, 10 Ohio St.2d 230, 231, 227 N.E.2d 212 (1967). Although we consider the credibility of witnesses in a manifest weight challenge, we are mindful that the determination regarding witness credibility rests primarily with the trier of fact because the trier of fact is in the best position to view the witnesses and observe their demeanor, gestures, and voice inflections — observations that are critical to determining a witness's credibility. *State v. Clark*, 8th Dist. Cuyahoga No. 94050, 2010- Ohio-4354, ¶ 17, citing *State v. Hill*, 75 Ohio St.3d 195, 205, 661 N.E.2d 1068 (1996), and *State v. Antill*, 176 Ohio St. 61, 66, 197 N.E.2d 548 (1964). The trier of fact is free to accept or reject any or all the testimony of any witness. *State v. Smith*, 8th Dist. Cuyahoga No. 93593, 2010-Ohio-4006, ¶ 16.

{¶40} After review, we find that Wilkinson's convictions are not against the manifest weight of the evidence. Admittedly, this case hinges on credibility and whether the jury believed Wilkinson. The jury could not ignore the fact that Wilkinson accepted a package not addressed to her and that she immediately opened. Once she saw the blinking device inside the parcel, she called her mother who coincidentally lived at the address where another parcel containing marijuana was to be delivered.

**{¶41}** The fact that Wilkinson provided the factfinder with an alternate version or explanation of the events and text messages does not automatically lead to the conclusion that her conviction was against the manifest weight of the evidence. The jury, as the factfinder, was able to listen to each witness presented and judge their respective credibility. The factfinder was within its province to credit the testimony of the officers and discredit Wilkinson's testimony. *State v. Whitsett*, 8th Dist. Cuyahoga No. 101182, 2014-Ohio-4933, citing *State v. Howard*, 4th Dist. Ross No. 07CA2948, 2007-Ohio-6331, ¶ 16.

**{¶42}** Accordingly, we cannot say that the jury lost its way in finding Wilkinson guilty, and we find that this is not the "exceptional case in which the evidence weighs heavily against the convictions" such that a new trial should be ordered. *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541.

**{¶43}** Wilkinson's second assignment of error is overruled.

### III. Admissibility of Testimony

**{¶44}** In her third assignment of error, Wilkinson contends that the trial court erred in allowing three of the state's witnesses to opine regarding her guilt, in violation of the Ohio Rules of Evidence and in violation of the right to a fair trial and in violation of the due process clause of the Fourteenth Amendment of the United States Constitution.

**{¶45}** Specifically, she contends that Officer Cline, Agent Donlin, and Officer Andrejcak were permitted to testify that she was a "middleman" or "mule," and that her possession of ten pounds of marijuana was evidence of trafficking, and that her phone calls and text messages to Marcus were evidence of trafficking. She contends that this testimony was extremely prejudicial and usurped the roll of the trier of fact. Additionally, she argues that the officers were permitted to testify as "experts" without first providing the proper foundation and without the filing of an

expert report. Finally, she contends that the testimony was unnecessary for the factfinder as the testimony was not beyond the ordinary jurors understanding and the jury was capable of forming competent conclusions absent the opinion.

**{¶46}** In this case, Wilkinson did not object or withdrew her objection to the testimony given by the officers, thereby waiving all but plain error. Plain error consists of an obvious error or defect in the trial proceeding that affects a substantial right. Crim.R. 52(B). Therefore, plain error occurs only when, but for the error, the outcome of the trial clearly would have been different. *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978); *State v. Hill*, 92 Ohio St.3d 191, 203, 749 N.E.2d 274 (2001).

**{¶47}** In support of her arguments on appeal, Wilkinson relies on *State v. Johnson*, 10th Dist. Franklin No. 02AP-373, 2002-Ohio-6957. In *Johnson*, police officers who did not witness the crime were permitted to state that based on their law enforcement training, and faced with the same facts and circumstances as presented at trial, they would not have shot another in self-defense. The court held that the testimony usurped the role of the jury because without actually witnessing the event, the officers were asked to draw a conclusion based on the facts presented.

**{¶48}** We find *Johnson* distinguishable because each testifying officer in this case was involved in the investigation and controlled delivery of the package. Therefore, we find that the officers' testimonies and opinions were admissible as lay witnesses pursuant to Evid.R. 701.

**{¶49}** Evid.R. 701 provides: "If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue."

**{¶50}** In *State v. Delaboin,* 8th Dist. Cuyahoga No. 90406, 2008-Ohio-4093, the officer testified that based on his experiences with drug users and drug dealers, the amount of crack cocaine he recovered was consistent with an amount for shipment and sale. This court held that the officer's opinion was admissible pursuant to Evid.R. 701 because it was based on his training and experience as a police officer of seven years, which included arresting both drug users and dealers. *Id*. at ¶ 26.

**{¶51}** Appellate courts have similarly determined that some testimony offered by officers and detectives is lay person witness testimony even though it is based on the officer – detective's specialized knowledge. *State v. McClain*, 6th Dist. Lucas No. L-10-1088, 2012-Ohio-5264, ¶ 13 (Detective's testimony that quantities of narcotics recovered during the execution of the search warrant suggested that they were for sale as opposed to personal use was admissible under Evid.R. 701 as lay person opinion testimony because his testimony was based on his training and experience.); *State v. Williams*, 9th Dist. Summit No. 25716, 2011-Ohio-6604, ¶ 11 (Officer's testimony that location was a methamphetamine lab was proper Evid.R. 701 testimony because it was based on personal observation from items taken from garbage and found in the house.).

**{¶52}** Much like in *Delaboin*, *McClain*, and *Williams*, the testimony given by the officers in this case was based on their training and experience with narcotics arrests, and their personal observations with the investigation and controlled delivery of the parcel.

**{¶53}** The officers opined that Wilkinson's actions and admissions indicated that her role in this matter was that of a "middleman" or "mule," and that the amount contained in the parcel was indicative of drug trafficking. Narcotics Officer Cline explained to the jury that normally drug paraphernalia is not discovered when a middleman or mule is involved because

that person is only receiving the package for someone else. Thus, according to Cline, Wilkinson was the middleman in this transaction. Agent Donlin, who previously worked for the Drug Enforcement Agency for six years and currently for Homeland Security, opined that "mules" or "nominees" operate for money or drugs. And based on the evidence uncovered of Wilkinson's involvement with Marcus, Agent Donlin opined that Wilkinson was a mule or nominee. Officer Andrejcak, a narcotics officer and a 14-year veteran in law enforcement, testified that 4900 grams of marijuana was consistent with trafficking, not personal use.

{¶54} The officers' testimony and opinions were based on their training and experience, which was applied to their firsthand observations of the parcel, its packaging, the quantity of the contents, and the circumstances surrounding Wilkinson's acceptance of the package. The testimony was helpful to determine a fact in issue; therefore, their testimony was properly admitted under Evid.R. 701 and was not plain error.

{¶55} Even excluding the officers' opinions and testimonies, evidence existed for the jury to find Wilkinson guilty of the offenses. Wilkinson accepted the package, signing her name illegibly on the receipt verification card. She admitted to law enforcement that she previously allowed her friend Marcus to receive a package at her address. An identical package was sent to her mother's address, who also happened to be the person she called when she discovered the beacon in her parcel. The jury heard that she and Marcus increased their frequency in phone calls, yet the content of the message was shorter than normal and according to Wilkinson was "code." Based on the circumstances, the jury did not need to hear that Wilkinson's role in this transaction was that of a mule or that the amount of marijuana in the parcel was indicative of drug trafficking, because the evidence and Wilkinson's own testimony established that she was

an integral intermediary part in this transaction. Accordingly, Wilkinson's third assignment of error is overruled.

{¶56} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

KATHLEEN ANN KEOUGH, PRESIDING JUDGE

TIM McCORMACK, J., and
EILEEN T. GALLAGHER, J., CONCUR