[Cite as *In re J.J.*, 2019-Ohio-866.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 106954**

**IN RE: J.J.**

**JUDGMENT:**
REVERSED; REMANDED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. DL17102095

**BEFORE:** E.A. Gallagher, J., S. Gallagher, P.J., and Headen, J.

**RELEASED AND JOURNALIZED:** March 14, 2019

**ATTORNEYS FOR APPELLANT**

Mark Stanton
Cuyahoga County Public Defender

BY: Paul Kuzmins
Assistant Public Defender
310 Lakeside Avenue, Suite 200
Cleveland, Ohio 44113

Aaron T. Baker
Assistant Public Defender
9300 Quincy Avenue, 5th Floor
Cleveland, Ohio 44106


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor

BY: Chadwick P. Cleveland
Assistant Prosecuting Attorney
The Justice Center, 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113


EILEEN A. GALLAGHER, J.:

{¶1} Defendant-appellant J.J. appeals from an order of the Juvenile Division of the Cuyahoga County Court of Common Pleas ("juvenile court") adjudicating him delinquent for kidnapping based on an incident in which he allegedly "twerked" on his half brother, J.W. He contends that his delinquency adjudication was not supported by sufficient evidence and that the juvenile court erred in allowing the alleged victim's mother, a sexual assault nurse examiner, a social worker from the Cuyahoga County Department of Children and Family Services ("CCDCFS") and the investigating police officer, to testify regarding statements J.W. made to

them after the court determined J.W. to be incompetent to testify at trial. Because we find the juvenile court failed to conduct a sufficient voir dire examination of J.W. before determining he was incompetent to testify, we reverse the trial court's judgment and remand the case for the juvenile court to conduct a proper voir dire examination of J.W. to determine his competency to testify.

**Factual and Procedural Background**

{¶2} On February 28, 2017, the state filed a nine-count delinquency complaint against J.J. alleging that he had sexually assaulted his half brother, J.W., between December 18, 2015 and December 16, 2016. The complaint charged J.J. with six counts of rape and three counts of kidnapping. The state charged the rape counts in the alternative under both R.C. 2907.02(A)(1)(b) (victim under 13 years of age) and R.C. 2907.02(A)(2) (by force). At the time of the alleged incidents, J.J. was 13 or 14 and J.W. was 5. J.J. denied the allegations of the complaint.

{¶3} On May 15, 2017, the state filed a notice of introduction of child victim statements pursuant to Evid.R. 807, setting forth its intent to introduce testimony by J.W.'s mother, N.S. ("mother"), Lauren Gaertner, a sexual assault nurse examiner at Fairview Hospital (the "SANE nurse"), Lauren Hennessey, a CCDCFS social worker (the "CCDCFS social worker"), and Maple Heights Police Officer Kevin Pozek regarding statements J.W. made to them involving incidents of alleged sexual abuse by J.J., if J.W. was unable to testify or refused to testify. The state indicated that it "intend[ed] to make a good faith effort to procure [J.W.'s] attendance at any trial or hearing," but would seek to introduce evidence of J.W.'s statements to others under Evid.R. 807 if he did not appear or was found to be incompetent. The state argued that, considering the totality of the circumstances, J.W.'s statements were trustworthy and reliable and that there was

independent proof that sexual abuse had occurred. J.J. filed a motion in limine to exclude evidence of any statements made by J.W., arguing that the statements constituted inadmissible hearsay, did not "comport with the requirements of Evid.R. 807" and would violate the Sixth Amendment's Confrontation Clause.

{¶4} On August 25, 2017, the trial court held a preliminary hearing to determine whether J.W. was competent to testify.[1] After determining that J.W. was not competent to testify, the trial court held an Evid.R. 807 hearing to determine the admissibility of J.W.'s statements to the other witnesses. The trial court held that J.W.'s statements to each of these witnesses were admissible under Evid.R. 807 and, over J.J.'s objections, allowed the witnesses to testify regarding the statements J.W. had made to them at the adjudicatory hearing.

{¶5} The adjudicatory hearing was held on December 4, 2017. At the hearing, the state presented testimony from five witnesses: J.W.'s mother, the SANE nurse, the CCDCFS social worker, Officer Pozek and R.W., the father of J.W. and J.J. A summary of the relevant testimony follows.

{¶6} J.W.'s mother testified that in December 2016, her sons were taking a bath while she was doing her daughter's hair. When she went to check on them, her younger son was "laying flat in the tub" and J.W. was "on top of him rubbing his stomach." She testified that she "pulled both of them out of the bathtub," put them in separate rooms and spoke with each boy separately. When she asked J.W., "where is he getting this from," she stated that he responded, "My brother does this to me at my dad's house." When asked to describe what his brother did to him at his dad's house, mother stated that J.W. told her that "he puts his pee-pee in my butt." J.W.'s

---

[1]At the preliminary hearing, the state argued that J.W. should be found incompetent to testify. J.J. did not take a position on whether J.W. should be found competent or incompetent to testify. His counsel stated: "[A]t this time we would leave it to the discretion of the Court to make that determination."

mother testified that J.W. also disclosed to her that J.J. was hurting him and calling him a "p***y, f***ing, b****." She stated that J.W. was "scared and crying" when he made these disclosures to her. J.W.'s mother stated that J.J. was the only brother J.W. saw at his father's house.

{¶7} J.W.'s mother testified that J.W. made additional disclosures the following day. She stated that when J.W. was "in the bathroom getting ready," he told her that when he was at his father's house, J.J. "put something on my pee-pee" and J.W. made "[l]ike an up-and-down movement." A "couple of days" after these disclosures, J.W.'s mother took him to Fairview Hospital "to go get him tested."

{¶8} J.W.'s mother testified that beginning in 2014, when J.W. "was like 4 and a half," she began noticing some behavioral changes in him. She testified that he started doing "some strange things, like sexual things" that she had never seen him do before "like he'll start humping the wall, humping the door, humping the floor, pulling his pants down." She indicated that "periodically he would do it" and that it would happen "most of the time when he came back from his father's house." At that time, J.W. was spending every other weekend with his father.

{¶9} At Fairview Hospital, a SANE nurse interviewed and examined J.W. The SANE nurse testified while she was coloring with J.W., J.W. described an incident in which J.J. was "laying on top of him," "twerking on him," i.e., making a pelvic-thrusting type of motion. J.W. indicated that J.J. was wearing shorts and J.W. had pants and a shirt on when this occurred. The SANE nurse testified that J.W. said he had told J.J. repeatedly "very loud and very firmly" to stop but that J.J. would not stop. The SANE nurse stated that J.W. told her that "this was bad, that boys shouldn't do that, and that they could go to jail." J.W. denied that J.J. had ever touched his "pee-pee" or his buttocks. The SANE nurse testified that she conducted a physical

examination of J.W. and found no physical injuries. The SANE nurse notified CCDCFS of the allegations and worked with J.W.'s mother to determine the correct jurisdiction in which to file a police report.

{¶10} On December 17, 2016, J.W.'s mother went to the Maple Heights Police Department and reported that J.W. had been sexually assaulted by J.J. After taking the report from J.W.'s mother, Officer Pozek interviewed J.W. and his mother regarding the allegations. Officer Pozek testified that while J.W. was in the room and before he asked J.W. what had happened, J.W.'s mother reported that J.W. had told her that "[J.J.] put his pee-pee in my butt." When Officer Pozek asked J.W. what had happened, J.W. initially told the officer only that J.J. was "twerking on him" and that "his clothes were on." However, when Officer Pozek asked J.W. directly whether "[J.J.] put his pee-pee in your butt," J.W. responded affirmatively.

{¶11} The CCDCFS social worker testified that she reached out to mother and made arrangements to interview her and J.W. at their home on December 20, 2016. The CCDCFS social worker testified that J.J. had "twerked on him" with his pants on, that J.J. had touched him in the bathroom when he was attempting to take a bath and that J.J. had put his "'peanuts' between J.W.'s butt cheeks." The social worker further testified that J.W. told her that J.J. had forced him to perform oral sex on J.J. and that "[J.J.] had showed him what [J.W.] was describing as pornography on the T.V."

{¶12} R.W. testified that J.J. lived with him, that J.W. was last at his home on November 24, 2015 and that he has been involved in an ongoing custody dispute with J.W.'s mother.

{¶13} At the close of the state's case, J.J. moved to dismiss all counts pursuant to Juv.R. 29. The juvenile court denied the motion.

{¶14} On January 16, 2018, the juvenile court adjudicated J.J. delinquent of one count of kidnapping in violation of R.C. 2905.01(A)(4) based on his "twerking" on J.W. As the juvenile court stated in its journal entry:

> Upon due consideration, the Court finds that the allegations set forth in count 3 of the complaint have been proven beyond a reasonable doubt[.] [T]he child herein did by any means, purposely remove the child/victim under the age of thirteen from the place where he was found or restrained him of liberty for the purpose of engaging in sexual activity (twerking upon the victim) against his will in violation of ORC 2905.01(A)(4).

The juvenile court found that there was insufficient evidence to prove the remaining counts of the complaint beyond a reasonable doubt and dismissed those counts.

{¶15} On February 12, 2018, the juvenile court held a dispositional hearing. The court ordered that J.J. be committed to the Ohio Department of Youth Services for a minimum of one year, but suspended that commitment. The court imposed one year of community control and ordered that J.J. be referred to community-based sex offender classes, that he submit to DNA testing and that he perform 50 hours of community service in lieu of court costs. J.J. appealed, raising the following three assignments of error for review:

> Assignment of Error I: J.J.'s conviction for kidnapping is not supported by sufficient evidence because the act of twerking is not sexual activity as defined by the Ohio Revised Code.

> Assignment of Error II: J.J.'s rights to confrontation were violated when the trial court allowed statements made to the investigating officer and social worker by the alleged victim to be admitted at trial.

> Assignment of Error III: The trial court erred in allowing the government to present statements made to a social worker and to the mother of the alleged victim where those statements did not meet the reliability requirements of Evid.R. 807.

**{¶16}** Because J.J.'s second and third assignments are tied to and intertwined with the trial court's determination that J.W. was incompetent to testify, this court, sua sponte, ordered the parties to submit supplemental briefs addressing the issue of "whether the voir dire examination of the alleged child victim by the trial court was sufficient to preclude him from testifying."

**{¶17}** J.J. submitted a supplemental brief in which he argued that the juvenile court's voir dire examination of J.W. was insufficient to preclude him from testifying. The state submitted a supplemental brief in which it argued that the trial court's determination that J.W. was incompetent to testify was supported by some competent, credible evidence and, therefore, "justified."

**Law and Analysis**

**{¶18}** Evid.R. 601 governs the competency of witnesses. It provides, in relevant part:

Every person is competent to be a witness except: * * *

Those of unsound mind, and children under ten years of age, who appear incapable of receiving just impressions of the facts and transactions respecting which they are examined, or of relating them truly.

Evid.R. 601(A).

**{¶19}** Thus, under Evid.R. 601(A), a child under ten years is not competent to testify if the child "appear[s] incapable of receiving just impressions of the facts and transactions respecting which they are examined, or of relating them truly." *See also* R.C. 2317.01. The determination of whether a child is competent is made by the trial court following a voir dire examination of the child. *State v. Frazier*, 61 Ohio St.3d 247, 250-251, 574 N.E.2d 483 (1991). ("It is the duty of the trial judge to conduct a voir dire examination of a child under ten years of age to determine the child's competency to testify under Evid.R. 601(A)."). In determining whether a young child is competent to testify, the trial court must consider the following factors:

(1) the child's ability to receive accurate impressions of fact or to observe acts about which he or she will testify, (2) the child's ability to recollect those

impressions or observations, (3) the child's ability to communicate what was observed, (4) the child's understanding of truth and falsity, and (5) the child's appreciation of his or her responsibility to be truthful.

*Id.* at 251. Thus, it is "the responsibility of the trial judge * * * to determine through questioning whether the child of tender years is capable of receiving just impressions of facts and events and to accurately relate them." *Frazier* at 251. The determination of a child's competence to testify is a matter within the sound discretion of the trial court and will not be reversed absent an abuse of discretion. *State v. Williams*, 8th Dist. Cuyahoga No. 105590, 2018-Ohio-845, ¶ 11, citing *State v. Maxwell*, 139 Ohio St.3d 12, 2014-Ohio-1019, 9 N.E.3d 930, ¶ 100.

{¶20} J.J. did not object to the juvenile court's finding of competency below. However, this court may recognize plain error, sua sponte, to prevent a miscarriage of justice. *See, e.g., State v. Vinson*, 2016-Ohio-7604, 73 N.E.3d 1025, ¶ 66 (8th Dist.); *State v. Noernberg*, 8th Dist. Cuyahoga No. 97126, 2012-Ohio-2062, ¶ 31; *State v. Slagle*, 65 Ohio St.3d 597, 604, 605 N.E.2d 916 (1992); Crim.R. 52(B). Plain error is an obvious error or defect in the trial proceedings that affects a substantial right. *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002). Reversal for plain error may be warranted when the defendant is prejudiced such that the outcome would have been different absent the error. *Id.*

{¶21} In this case, the juvenile court failed to explore virtually any of the *Frazier* factors with J.W. before determining that he was incompetent to testify. Instead, the trial judge asked J.W. a series of somewhat confusing, and often compound or complex, questions about how he got to the courthouse and what happened after he arrived. For example, in what appears to be a laudable attempt to establish a rapport with J.W., the juvenile court judge began her inquiry of

J.W. with a series of questions probing J.W.'s statement that he "drove" to the courthouse that morning; however, it appears to have had the opposite effect on J.W.:

THE COURT: * * * Do you know why you're here?

THE WITNESS: I don't know.

THE COURT: How did you get to my building?

THE WITNESS: Drove.

THE COURT: You drove? I don't think you can see over the steering wheel. Did somebody else drive the car? You drove the car? Are you sure?

Is that true? Okay, you got to my building in a car, right?

Okay. Who was driving the car?

THE WITNESS: My mom.

THE COURT: I'm sorry?

THE WITNESS: My mom.

THE COURT: Oh, your mom. Now, it seems to me that she's old enough and big enough to see over the steering wheel to drive the car. Wouldn't you say so?

THE WITNESS: Um-hmm.

THE COURT: Okay. Did anybody else ride in the car with you and your mom?

THE WITNESS: (Inaudible).

THE COURT: Okay. Did she tell you when you got in the car where you all were going?

THE WITNESS: I don't know.

{¶22} The juvenile court judge then proceeded to ask J.W. about the size of the building and his experiences passing through security and riding the elevator at the courthouse. She

concluded her inquiry with a series of vague questions that appear to relate to J.W.'s meeting with a victim advocate prior to the hearing:

> THE COURT: * * * When you go to the room, did you sit down?
>
> Okay. And after you were sitting down, did they ask you to come to another room and sit someplace else?
>
> THE WITNESS: No.
>
> THE COURT: Okay. Did anyone else come to the room where you were sitting?
>
> THE WITNESS: Yeah.
>
> THE COURT: Okay. Do any of the people in this room look like someone who came to that room at the time?
>
> Oh, okay. The person that came to see you in the room, what did they want?
>
> THE WITNESS: I don't know.
>
> THE COURT: Okay. Were you able to help them?
>
> Oh, Okay. How did you help them?
>
> THE WITNESS: I don't know.
>
> THE COURT: Okay. Did they ask you questions?
> Okay. Did you answer their questions?
>
> THE WITNESS: Um-hmm.
>
> THE COURT: Okay. Do you remember what your answers were?
>
> THE WITNESS: No.
>
> THE COURT: Okay. Are you ready to take a break?
> Me, too. Okay.

{¶23} The juvenile court's questioning of J.W. fills only five pages of the transcript. In determining that J.W. was incompetent to testify, the juvenile court focused almost exclusively

on his demeanor, i.e., the fact that J.W. was soft spoken and tentative in responding to the judge's questions, and the fact that he did not know why he was at the courthouse or in the courtroom. As the juvenile court explained its ruling:

> THE COURT: For purposes of the record, upon due consideration, the Court finds the request of the State of Ohio to be well-taken.
>
> It is possible that the record will not adequately reflect the answers of the alleged victim as the Court began its conversation with him, not because he was too short to reach the microphone or that the microphone was not positioned in a way to pick up his words, but he was very quiet and very tentative, and in responding to my question why he was here his response was he did not know.
>
> How did he arrive? He realized that he didn't drive, that it was his mom that drove. But in coming to the courthouse, he still did not know where he was going.
>
> And in preparation for this hearing, I do not believe that he had the necessary competence to openly testify as when the Court inquired do you know why you're here, do you remember what you said to people who asked you questions, and he said, if I remember his quote correctly, I don't know. * * *
>
> In observing the child and asking him his name and did he know why he was here, there was one thing that I do want to note for the record that I observed, and that was his glance towards the alleged victim [sic] or in the direction of the alleged victim [sic]. * * * The alleged child victim is found to be not competent to testify.

{¶24} At the time of the competency hearing, J.W. was six and a half. It is no surprise that a six and-a-half -year-old might not understand why he is at court or may have difficulty articulating his understanding of "why he was here" in response to the judge's questions. However, a lack of understanding regarding why he was appearing in court or a reticence in responding to questions by the judge regarding "why he was here" or regarding other insignificant or unfamiliar events or procedures he experienced that morning at the courthouse does not mean that J.W. was unable or unwilling to truthfully answer relevant questions regarding memorable events that allegedly occurred in the past. *See, e.g., State v. Walters*, 9th

Dist. Summit No. 28582, 2018-Ohio-1175, ¶ 29 (fact that child "did not know anything about trials, judges, or the legal system or that she was unable to remember certain people's names does not establish her incompetence to testify"); *State v. Walsh*, 3d Dist. Union No. 14-97-20, 1997 Ohio App. LEXIS 5292, 7-11 (Nov. 13, 1997) (trial court erred in ruling that six-year-old witness was incompetent to testify where the questions asked at the competency hearing were compound, confusing, used terminology that would not have been familiar to a six-year-old and went beyond the scope of Evid.R. 601(A)); *State v. Remy*, 2d Dist Clark No. 2017-CA-7, 2018-Ohio-2857, ¶ 91 ("'The fact that a child cannot remember certain generalities does not deem the child incompetent to testify. The key issue is whether the minor was able to receive accurate impressions of fact and could truthfully relate those impressions in court.'"), quoting *State v. Brooks*, 2d Dist. Montgomery No. 18502, 2001-Ohio-1650, 8 (Oct. 26, 2001); *State v. Pickens*, 3d Dist. Marion No. 9-16-35, 2017-Ohio-1231, ¶ 56 (fact that child victim "'seemed confused and had initial difficulty answering some of the specific questions posed by the trial court,'" did not preclude a finding of competency where "the totality of the record reflected she was able to receive just impressions and relate them truthfully" and her responses to other questions demonstrated that "'she knew the difference between truth and falsity and understood that she should tell the truth'"), quoting *State v. Spencer*, 3d Dist. Marion No. 9-13-50, 2015-Ohio-52, ¶ 56.

{¶25} Conspicuously absent from the juvenile court inquiry in this case were (1) any questions regarding J.W.'s ability to look back in time and accurately recall and communicate his impressions regarding significant, memorable events, (2) any questions regarding his interactions with J.J., twerking or any of the other allegations in the case or (3) any questions directed to determining whether J.W. recognized the importance of telling the truth and whether he

understood the difference between telling the truth and lying — questions related to the first, second, fourth and fifth *Frazier* factors. Accordingly, the juvenile court could not have considered those factors in determining whether J.W. was competent to testify as it was required to do under Evid.R. 601(A) and *Frazier*.

{¶26} Under the particular facts and circumstances of this case, we believe that the juvenile court's failure to conduct a proper voir dire examination of J.W. before determining he was incompetent to testify constitutes an abuse of discretion and plain error. Whether J.W. was competent to testify was a critical factor in the admissibility of the testimony of J.W.'s mother, the SANE nurse, the CCDCFS social worker and the investigating police officer regarding the statements J.W. made to them — the evidence upon which J.J.'s delinquency adjudication was based. *See, e.g., State v. Singleton*, 2016-Ohio-4696, 69 N.E.3d 118, ¶ 24 (8th Dist.) ("When a child has been found not competent to be a witness, her testimony is 'not reasonably obtainable' pursuant to Evid.R. 807(B)(2)"). If J.W. had been competent to testify, that testimony likely would not have met the requirements for admissibility under Evid.R. 807 as an exception to the hearsay rule. Accordingly, we remand the case for the juvenile court to conduct a proper voir dire examination of J.W. that complies with Evid.R. 601(A) and *Frazier*.

{¶27} Judgment reversed; remanded for further proceedings consistent with this opinion.


It is ordered that appellant recover from appellee the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the Juvenile Division of the Cuyahoga County Court of Common Pleas to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN A. GALLAGHER, JUDGE

SEAN C. GALLAGHER, P.J., and
RAYMOND C. HEADEN, J., CONCUR