[Cite as *State v. Kish*, 2026-Ohio-2409.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

    Plaintiff-Appellee,         :

    v.                                      :

KALECA KISH,                            :

    Defendant-Appellant.      :

No. 115532

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:**  AFFIRMED IN PART, REVERSED IN PART,
                AND REMANDED
**RELEASED AND JOURNALIZED:**  June 25, 2026

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-24-696432-B

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, Michael R. Wajda, Assistant Prosecuting
Attorney, and Sophie E. Kormos, Certified Legal Intern,
*for appellee*.

Joseph V. Pagano, *for appellant*.

MICHAEL JOHN RYAN, J.:

{¶ 1} Defendant-appellant Kaleca Kish ("Kish") appeals her convictions for three counts of endangering children and three counts of retaliation. Kish was

charged with a codefendant, Darwin Canales ("Canales"), her boyfriend. The convictions were rendered after a joint bench trial.[1] After a review of the facts and pertinent law, we affirm the endangering children convictions but reverse the retaliation convictions.

**Procedural and Factual History**

{¶ 2} The indictment against Kish and Canales was filed in October 2024; it consisted of 12 counts. Counts 1 through 6 charged both defendants with endangering children; there were two counts for each of the three children. Counts 7 through 9 charged Kish with intimidation of an attorney, victim, or witness in a criminal case. Counts 10 through 12 charged Kish with retaliation.

**Competency of the Child Victims**

{¶ 3} At the time leading up to trial, the middle child was six years old, and the youngest child was five years old. The defense challenged the competency of the children.[2] Prior to trial, the trial court conducted competency hearings with the children.

{¶ 4} The youngest child stated his first name, last name, and his age. He told the court that he went to preschool, named his teacher and identified her as "a girl." (Tr. 76–77.) The youngest child also identified all of his siblings by name including his half-siblings, whom he had just then-recently met after moving in with his father.

---

[1] Canales was convicted on two counts of child endangering. He has appealed his conviction, and his appeal, Case No. 115519, pends as a companion case to this appeal.

[2] Kish does not challenge the competency of the oldest child on appeal; therefore, we only address the competency of the youngest and middle children.

In response to the trial court asking him to count to ten and recite the alphabet, the child nodded. (Tr. 82.) He told the trial court that a lie is bad and when he lies, he gets in trouble; specifically, he gets a "whipping." (Tr. 83.) The trial court asked the youngest child, "So do you want to lie or tell the truth," to which he replied, "Truth." (Tr. at *id.*) The child again assured the court that he could tell the truth and clarified that the truth is good, and a lie is bad. When asked whether he would be able to tell the truth, the youngest child nodded his head affirmatively.

{¶ 5} The middle child spelled her first name and last name for the trial court. She stated that she goes to half-day sessions of kindergarten and named her teacher. The child counted to ten and recited the alphabet. She stated that there are five days in a week. The middle child also told the trial court about her pets — two dogs and two cats. She told the court her birthday is on Christmas Eve (which is true) and told the court she had a birthday party but could not give specifics about it. The child told the court that Santa brings her presents on Christmas, but "everybody" brings her presents on her birthday. (Tr. 109.) The child also told the court that she knew the difference between the truth and a lie. She explained that the truth is good and lies are bad. The child promised the trial court that she would tell the truth. The court asked her what would happen if she did not tell the truth in court, and she said she did not know. The middle child also told the court that she did not know why she was there that day and that she did not talk to anyone about the court proceedings. She confirmed to the court that the truth is good and a lie is bad.

{¶ 6} The trial court found the youngest and middle children competent to testify.

**Facts as Elicited at Trial**

{¶ 7} The charges were based on the children being disciplined by Kish and Canales, including by being "whopped" with a belt and made to stay in a locked, unfinished basement without food, water, or access to a bathroom for prolonged periods of time. The basement was plagued by mice. The incidents came to light after the children's preschool reported injuries they observed on the children.

{¶ 8} A teacher from the children's day care testified about what she observed. The teacher testified that the children would often have bruises and marks in varying sizes, including on one occasion what she believed was in the shape of a hand. Sometimes the bruises were long and "welt like." The daycare staff noticed that the children would often have the bruises when they came to school after the weekend. The staff began documenting the children's injuries by taking pictures of them and including descriptions of how the marks occurred based on what the children told them, which was that Kish and Canales were hurting them.

{¶ 9} In addition to the bruising, the daycare staff noted other injuries to the children. The staff noted, all on separate occasions, that the youngest child came to daycare with a swollen upper lip; a large, dark purple bruise behind his ear; red and inflamed fingers; and what the daycare worker believed to be a broken nose with dried blood around his nose. Further, a mouse bit the youngest child and a spider bit the middle child.

{¶ 10} The Cuyahoga County Division of Children and Family Services ("CCDCFS" or "the agency") became involved with the family after the daycare provider shared its concerns with the agency. Intake case worker Leah Najfach ("Najfach") was the initial investigator on the case. Najfach was unable to make contact with anyone on her first visit to the family's house and left a voicemail message.

{¶ 11} Kish returned the phone call; she denied the allegations, said that there was nothing wrong with the children, and told Najfach that the agency was not allowed to see the children. Najfach testified that Kish was aggressive and "on edge." According the Najfach, the agency required her to see the children in person. Najfach was able to get Kish to agree to a visit, which occurred approximately one week later. At the visit, Kish did not allow Najfach to speak with the children individually or outside of her presence. When Najfach asked the children questions about the discipline they received or what they eat, they looked at Kish before answering. Further, Kish interjected as the children were attempting to answer. According to Najfach, she could not conduct a proper interview of the children because of Kish's intervention. Najfach left the home with concerns that Kish and Canales were physically abusing the children.

{¶ 12} The case was next investigated by Tammy Wagner ("Wagner"), a CCDCFS social worker in the sex abuse unit. Wagner visited Kish's home to speak with the children; however, Kish would not let her talk to the children alone. Wagner explained that it was important to speak with the children without Kish or Canales

present because, if there was something inappropriate happening to them by Kish or Canales, they likely would not say it in front of Kish and Canales.

{¶ 13} Wagner testified that the oldest child fearfully looked at Kish before answering certain questions. According to Wagner, the children's fear of Kish was evident; it led Wagner to conduct forensic interviews at the Canopy Child Advocacy Center for all of them on the same day that she visited their home, which was not standard practice. After conducting three separate interviews that same day, Wagner believed the children were not completely forthcoming. Wagner also interviewed Kish that day, who admitted to "whooping" her children.

{¶ 14} In addition to Wagner's interview of the children later on the same day as her house visit, she also conducted additional forensic interviews for each child throughout the course of several months. Throughout the course of these interviews, Wagner learned from the youngest child that Kish and Canales locked him in the basement without even a blanket. During an interview of the middle child, the child walked into the interview room and immediately, without any questions having been posed to the child, told Wagner that "nothing happened." Wagner testified that she believed, based on the child's statement, that Kish was likely coaching the child on how to answer questions.

{¶ 15} However, during that same interview of the middle child, the child told Wagner that Kish and Canales hit her with belts on her legs, arms, and thighs. The child said that Kish hit her and her siblings because they would not always go to bed on time. The middle child further told Wagner that Kish "whooped" her on the day

that Wagner visited their home and accused her of lying to Wagner. The child explained to Wagner that Kish instructed her to lie and tell Wagner that nothing happened. If the child did not lie, Kish said she would not be able to go to her grandmother's house for Easter.

{¶ 16} A victim advocate at the Child Advocacy Center, Jasmine Carr ("Carr"), testified about Kish's disturbing behavior that she witnessed while the youngest child was being interviewed the first time. Kish was on speakerphone with Canales, talking to him in front of Carr and her two other children. During the conversation, Kish told Canales and the two children that she was going to "beat their asses for lying when they left." (Tr. 491.)

{¶ 17} When the youngest child finished his interview and the family was leaving, Kish told the children that she would beat them at home. Carr immediately reported this to Wagner. Both Carr and Wagner testified that Kish stormed out the center and rushed to her car. The children got into the car, and without seatbelts on, Kish sped out of the parking lot, barely stopping as she turned onto the street. Wagner was so concerned that she called 911 and requested a wellness check for the children. Wagner also sought a telephonic order of removal of the children, which was granted.

{¶ 18} Because of Kish's hostility, Wagner requested the Cleveland police meet her at Kish's home to remove the children which, according to Wagner, was not standard practice. Removal of the children took a few hours because Kish initially would not answer the door and ordered the children to stay away from the windows,

so they were not seen. After hours of refusal, Kish finally opened the door and let the children go. The children were taken to MetroHealth Hospital for standard physical examinations and then released to their father.

{¶ 19} The children's father, who had not been involved in their lives until they were released to him, testified that initially the children were "nervous" around him, but quickly calmed down. (Tr. 610.) He admitted that he was essentially a "stranger" to the children. (Tr. 622.) CCDCFS recommended counseling for the children and father facilitated getting the counseling for them. Father testified that he learned that the children had been abused. The children were diagnosed with posttraumatic stress disorder ("PTSD") and depression.

{¶ 20} At the time of trial, father had legal custody of the children. Father described them as "fun-loving" children. (Tr. 615.) They were still in counseling and occasionally would talk about what happened to them with their mother and Canales; father described them as looking "afraid" when they talked about it. (Tr. 616.)

**Crim.R. 29, Verdict, and Sentence**

{¶ 21} At the conclusion of the State's case, Kish made a motion for judgment of acquittal under Crim.R. 29. The trial court granted the motion as it related to Counts 7 through 9, intimidation of an attorney, victim, or witness in a criminal case. The court denied the motion as it related to the remaining counts.

{¶ 22} After its deliberations, the trial court found Kish not guilty of the endangering children charges in Counts 4 through 6 of the indictment. The court found Kish guilty of the endangering charges in Counts 1 through 3 of the

indictment.  The trial court also found Kish guilty of the retaliation charges in Counts 10 through 12 of the indictment.

{¶ 23} The trial court imposed nine-month prison terms on all the counts on which it returned guilty verdicts.  The court imposed consecutive terms on the endangering children charges (Counts 1 through 3).  All the other counts were ordered to be served concurrently.  The aggregate sentence imposed on Kish was 27 months.

**Assignments of Error**

{¶ 24} Kish now raises the following five assignments of error for our review:

I.  The trial court erred by finding the Middle Child and the Youngest Child competent to testify and the admission of their testimony violated appellant's right to due process and a fair trial under the Ohio Constitution and the United States Constitution.

II. The trial court erred when it denied appellant's motion for acquittal under Crim.R. 29 because the state failed to present sufficient evidence to establish beyond a reasonable doubt the elements necessary to support the convictions.

III.  The trial court erred by admitting testimony over valid objections.

IV.  Appellant's convictions are against the manifest weight of the evidence.

V.  The court abused its discretion by denying Appellant's request for a mitigation of penalty report or presentence investigation report and the consecutive sentences are contrary to law.

**Law and Analysis**

{¶ 25} For ease of discussion, some of the assignments of error are considered out of order and some are considered together.

**The Trial Court Did Not Abuse its Discretion by Finding the Children Competent to Testify**

{¶ 26} In her first assignment of error, Kish contends that the youngest and middle children were not competent to testify; at the time of trial, they were five and six years old, respectively.

{¶ 27} Evid.R. 601(A) provides that every person is competent to testify except, relevant to this case, persons:

> (1) Incapable of expressing himself or herself concerning the matter as to be understood, either directly or through interpretation by one who can understand him or her; [or]
>
> (2) Incapable of understanding the duty of a witness to tell the truth[.]

Evid.R. 601(A)(1) and (2).

{¶ 28} R.C. 2317.01 further provides in relevant part that "[a]ll persons are competent witnesses except . . . children under ten years of age who appear incapable of receiving just impressions of the facts and transactions respecting which they are examined, or of relating them truly." The proponent of testimony from a child under ten years old bears the burden of proving that the witness is competent to testify. *State v. Clark*, 71 Ohio St.3d 466, 469 (1994).

{¶ 29} In determining the competency of a child witness, a trial court must consider whether the child is able to (1) receive accurate impressions of fact or observe acts about which the child will testify, (2) recall those impressions or observations, (3) communicate what was observed, (4) understand truth and falsity,

and (5) appreciate the responsibility to be truthful. *State v. Frazier*, 61 Ohio St.3d 247, 250-251 (1991).

{¶ 30} A child is competent to testify even if the child fails to recollect some facts or initially fails to recognize the concept of truth "so long as other answers demonstrate that the child can perceive and recall generally and understands the concept of truthfulness." *State v. Fry*, 2010-Ohio-1017, ¶ 76 (holding that a child was competent to testify despite initially answering some questions incorrectly about the meaning of truthfulness, when he later demonstrated an understanding that telling the truth is good and lying is bad). For example, this court upheld a child's competency where the record demonstrated that the child understood the difference between a truth and a lie, promised to be truthful, identified her abuser, and recalled the abuse. *State v. Simmons*, 2024-Ohio-3188, ¶ 23 (8th Dist.).

{¶ 31} We will not reverse a trial court's decision on a child's competency to testify absent an abuse of discretion. *Clark*, 71 Ohio St.3d at 469. An abuse of discretion occurs when a court exercises "its judgment, in an unwarranted way, in regard to a matter over which it has discretionary authority." *Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 35.

{¶ 32} Review of the youngest child's competency hearing demonstrates the child was able to receive accurate impressions of fact, recollect those facts, and communicate them. Thus, the first three *Frazier* factors were satisfied. The youngest child told the court his full name, his age, what grade he was in, and the

name and gender of his preschool teacher. He also named all his siblings, including stepsiblings he had recently met after going to live with his father.

{¶ 33} Kish calls our attention to the fact that the child initially forgot what he had for breakfast. But the child subsequently told the court that he had a blueberry Pop Tart that was warmed in the microwave. This record demonstrates the child's ability to receive accurate impressions of fact, recall those facts, and communicate them to the court.

{¶ 34} Regarding truth-telling, we are not persuaded, as suggested by Kish, that the youngest child's inability to recite the alphabet and count to ten called into question his competency. The child told the court that if he lies, he gets "a whipping." (Tr. 83.) That the child was able to disclose that he gets "whipped" whenever he tells a lie or gets into trouble demonstrates both his ability to recall and communicate observations and his understanding of the truth and his obligation to tell it. Moreover, the child told the trial court he was going to tell the truth. We are not persuaded that the child's inability to recite the alphabet affected his capacity to perceive, recall, and communicate observed events; it merely reflected on an academic skill. On this record, the fourth and fifth *Frazier* factors were satisfied. The trial court did not abuse its discretion by finding the youngest child competent to testify.

{¶ 35} According to Kish, the middle child exhibited "fundamental deficiencies" and was not competent because she did not satisfy the fourth and fifth *Frazier* factors. We disagree.

{¶ 36} According to Kish, the middle child failed to demonstrate the fourth and fifth *Frazier* factors because the child said she did not know why she was in court or what a judge does. Those responses did not make the child incompetent, however. *See In re J.J.*, 2019-Ohio-866, ¶ 24 (8th Dist.) (stating that "[i]t is no surprise that a six-and-a-half-year-old might not understand why he is at court," and finding the lack of understanding did not make the child incapable of answering questions about his own personal experiences and memorable events).

{¶ 37} A child is competent when the totality of the record reflects the child's ability to receive impressions of fact and communicate them truthfully. *In re J.J.* at *id.*, citing *State v. Spencer*, 2015-Ohio-52, ¶ 56 (3d Dist.). The record must also demonstrate that the child knows the difference between the truth and a lie and understands the obligation to tell the truth. *In re J.J.* at ¶ 24. A child's initial confusion about the concept of truth does not preclude a finding of competency when the child's responses to other questions demonstrate an understanding of truthfulness and the obligation to testify truthfully. *Id.*

{¶ 38} Here, when initially asked by the trial court, the middle child said she knew what the truth was and what a lie was and further elaborated that the truth is good and a lie is bad. In response to the court's question about what happens when she lies, the child said she did not know. Shortly after, the trial court asked middle child to promise to tell the truth in court, and the child said she would. The child stated that telling the truth is good and lying is bad.

{¶ 39} Moreover, the record demonstrates that the middle child had the capacity to perceive, remember, and accurately communicate facts about herself, her experiences, and familiar events. These abilities undermine Kish's claim of "fundamental deficiencies" and satisfied the first three *Frazier* factors. The middle child spelled her first and last name for the court and stated that she was in kindergarten and her birthday is on Christmas Eve. She named and described all four of her pets. The child also counted to ten and recited the alphabet and told the court she was learning how to count by tens at school.

{¶ 40} Our review of the record demonstrates that the middle child understood the difference between truth and falsity and the responsibility to be truthful when testifying.

{¶ 41} Moreover, even if the trial court did abuse its discretion by allowing the youngest and middle children to testify, it was harmless error. The oldest child, whose competency Kish does not challenge, testified in more detail than either the youngest or the middle children. Additionally, the social workers involved with the family, including the one worker who interviewed the children, all testified at trial and in more detail than the youngest and middle children. Thus, the testimonies of the youngest and middle children were cumulative to the other testimonies. In *State v. Bright*, 2024-Ohio-2803 (8th Dist.), this court found no prejudice occurred when the challenged testimony — the testimony of a child who was not subject to a competency determination — was cumulative to other properly admitted evidence that provided the same or greater detail.

{¶ 42} On this record, the first assignment of error is without merit and hereby overruled.

**The Trial Court Did Not Abuse its Discretion by Allowing Certain Testimony and Evidence**

{¶ 43} In her third assignment of error, Kish contends that the trial court abused its discretion by allowing certain testimony and evidence over her objections. Specifically, Kish takes exception with the following: (1) Najfach's testimony about her observations of Kish's basement; (2) Najfach's response to the questioning about what she learned through her investigation; (3) Wagner's testimony that the middle and youngest children gave her more details about the basement; (4) Wagner's elaboration on additional injuries to one of the children; (5) Wagner's testimony about a bruise on the youngest child's nose; (6) the admission of photographs of the children taken by staff at their daycare; and (7) Wagner's opinion testimony.

{¶ 44} "A trial court has broad discretion regarding the admission of evidence, including whether evidence constitutes hearsay and whether it is admissible hearsay." *State v. Wingfield*, 2019-Ohio-1644, ¶ 29 (8th Dist.), citing *Solon v. Woods*, 2014-Ohio-5425, ¶ 10 (8th Dist.). A decision regarding the admission of evidence will not be overturned absent an abuse of discretion. *State v. Payne*, 2019-Ohio-4158, ¶ 38 (8th Dist.). As mentioned, an abuse of discretion occurs when a court exercises "its judgment in an unwarranted way regarding a matter over which it has discretionary authority." *Abdullah*, 2021-Ohio-3304, at ¶ 35. "Moreover, in a bench trial, the judge is presumed capable of disregarding

improper hearsay evidence, and unless it is demonstrated that the court relied on inadmissible hearsay, a conviction will not be reversed." (Cleaned up.) *State v. Centers*, 2026-Ohio-451 (8th Dist.).

{¶ 45} We consider the seven challenged areas of questioning in turn. First, the allegations against Kish included that she made the children stay in the basement for extended periods of time for punishment. Social worker Najfach testified that on her visit to the family's home she paid particular attention to the basement and observed that there was "nowhere to sit," "no comforting items," and no "access to food [or] toys." The testimony was germane to Najfach's investigation of the case, and it was not hearsay or otherwise improper. The trial court did not abuse its discretion by allowing it.

{¶ 46} Second, Kish contends that the trial court abused its discretion by allowing Najfach's response to questioning about what she learned through her investigation. Her response was "[t]hat if the children were being bad, their discipline was that they were put in the basement. And they were often left for very long hours at a time, if not overnight." (Tr. 187.)

{¶ 47} Evid.R. 807 is a specific hearsay exception in Ohio law, often used in abuse cases, that permits the admission of an out-of-court statement made by a child under 12 years of age describing sexual or physical abuse. Specifically, Evid.R. 807(A) permits the admission of out-of-court statements made by a child under 12 years of age describing any sexual activity or abuse if the following conditions are met: (1) the totality of the circumstances surrounding the making of the statement

provides particularized guarantees of trustworthiness; (2) the child's testimony is not reasonably obtainable by the proponent of the statement; (3) there is independent proof of the activity or abuse; and (4) at least ten days before the trial or hearing, the proponent of the statement has provided notice in writing of his or her intent to use the statement.

{¶ 48} Kish recognizes Evid.R. 807, but because it is her position that the youngest and middle children were incompetent to testify, she contends that any out of court statements they made were "equally unreliable." As discussed in resolving the first assignment of error, the record demonstrates that the youngest and middle children were competent. Further, under the current state of the law in Ohio, there is no competency requirement for the admission of a child's hearsay statement under Evid.R. 807. *See State v. Silverman*, 2009-Ohio-1576 (overruling the competency requirement for an Evid.R. 807 statement previously set forth in *State v. Said*, 71 Ohio St.3d 473 (1994)). On this record, there is no merit to Kish's second allegation of improper testimony.

{¶ 49} For her third allegation of improper testimony, Kish cites social worker Wagner's testimony that the middle and youngest children gave her more details about the basement. Kish's objection was based on the fact that only the youngest child discussed the basement during the interview with Wagner. After the objection, the State changed its line of questioning. Therefore, the testimony was not prejudicial.

{¶ 50} Kish's fourth and fifth allegations of improper testimony relate to Wagner's elaboration on additional injuries to one of the children. Specifically, Wagner testified that the youngest child told her that he was bitten by a mouse in the basement and that he had a bruise on his nose because Kish threw him to the floor. At trial, the youngest child testified that he did not remember the incidents. One of the other children testified that there were mice and spiders in the basement and all three of the children testified about having to go to the basement for punishment. Further, one of the children's daycare providers testified about bruising on the youngest child's nose. Thus, the elements of trustworthiness and independent truth were met and Wagner's testimony fell under the ambit of Evid.R. 807.

{¶ 51} For her sixth allegation of improper testimony, Kish cites the admission of photographs taken by the children's daycare provider. The photographs purported to show injuries the children had, and the daycare provider testified about how the children sustained the injuries.

{¶ 52} Evid.R. 803(6) creates a hearsay exception for "records of regularly conducted activity." This rule excepts business records from exclusion at trial if they are made in the course of a regularly conducted business activity "because the courts presume that such records are trustworthy given the self-interest to be served by the accuracy of such entries." *State v. Cassano*, 2012-Ohio-4047, ¶ 21 (8th Dist.), citing *Weis v. Weis*, 147 Ohio St. 416, 425-426 (1947).

{¶ 53} In order to qualify for the business-records exception, a record must meet the following criteria: (1) the record must be one recorded regularly in a regularly conducted activity; (2) a person with knowledge of the act, event, or condition recorded must have made the record; (3) it must have been recorded at or near the time of the act, event, or condition; and (4) the party who seeks to introduce the record must lay a foundation through testimony of the record custodian or some other qualified witness. *State v. Boiani*, 2013-Ohio-1342, ¶ 29 (8th Dist.), citing *State v. Davis*, 2008-Ohio-2, ¶ 171.

{¶ 54} The daycare provider testified that it was the daycare's practice to document instances when children came to the provider with injuries they suspected were sustained because of possible abuse; the documentation was retained as the provider's standard practice. Thus, the daycare provider, who had knowledge of the photographs of the children's suspected injuries, laid a foundation for the admission of the photographs through the business-records exception and they were properly admitted as such. Further, the daycare provider's testimony that the children described to her how they sustained the injuries was admissible under Evid.R. 807.

{¶ 55} Kish's final allegation of improper testimony relates to Wagner's opinion testimony. According to Kish, the State failed to lay a proper foundation for her testimony. We disagree.

{¶ 56} Wagner testified as a lay witness. Evid.R. 701 governs opinion testimony by lay witnesses and states as follows: "If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to

those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue."

{¶ 57} This court has held that a State witness not presented as an expert can properly testify under Evid.R. 701 when "(1) the testimony is based on the witness's training or experience, (2) the testimony relates to the witness's personal observations with the investigation, and (3) the testimony is helpful to determine a fact at issue." *State v. Calhoun*, 2017-Ohio-8488, ¶ 34 (8th Dist.), citing *State v. Wilkinson*, 2014-Ohio-5791 (8th Dist.). Further, this court has held that "a trial court may allow a social worker to testify to the general manner in which children disclose . . . abuse so long as no opinion is offered as to the truth of the victim's statements." *State v. Peterson*, 2024-Ohio-2903, ¶ 31 (8th Dist.).

{¶ 58} Here, Wagner testified that she had been a social worker for five years. She testified about her training and experience with young children, including training about children's development and memory recollection. Wagner testified that the children were not initially completely forthcoming. Later, however, particularly when they were not in Kish's presence, they revealed more detail about Kish's abuse of them. Her testimony aided the factfinder in understanding the children's gradual disclosures and was properly admitted under Evid.R. 701.

{¶ 59} The trial court did not abuse its discretion in allowing the challenged testimony and the admission of the challenged evidence. The third assignment of error is overruled.

**Sufficient Evidence Supported the Endangering Children Convictions and They Were Not Against the Manifest Weight of the Evidence**

{¶ 60} In her second assignment of error, Kish contends that the State failed to present sufficient evidence to support her convictions. In her fourth assignment of error, Kish contends that the convictions were against the manifest weight of the evidence.

{¶ 61} A sufficiency of the evidence analysis reviews whether, as a matter of law, the evidence is adequate to support the factfinder's verdict. *State v. Mattox*, 2018-Ohio-992, ¶ 23 (2d Dist.). The "relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶ 62} In contrast, an appellate court's manifest-weight review requires the court to "review the record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created a manifest miscarriage of justice warranting reversal and a new trial." (Citations omitted.) *Mattox* at ¶ 24. A reversal based upon a manifest weight of the evidence analysis is reserved for the "'exceptional case in which the evidence weighs heavily against the conviction.'" *State v. Hill*, 2013-Ohio-717, ¶ 8 (2d Dist.), quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983).

{¶ 63} A finding that a conviction is not against the weight of the evidence "'necessarily includes a finding of sufficiency.'" (Citations omitted.) *Mattox* at ¶ 24, quoting *State v. McCrary*, 2011-Ohio-3161, ¶ 11 (10th Dist.). Thus, a finding that a conviction is not against the manifest weight of the evidence is also a finding the conviction is, as a matter of law, supported by sufficient evidence.

{¶ 64} The State's theory of this case was that Kish engaged in excessive corporal punishment of the children. While Ohio law recognizes a parent's right to administer reasonable corporal punishment to his or her child, it prohibits any person from abusing or administering excessive corporal punishment in disciplining a child. *State v. Suchomski*, 58 Ohio St.3d 74, 75 (1991); R.C. 2919.22(B)(1) and (3). Kish was convicted under R.C. 2919.22(B)(3), which provides that

> [n]o person shall do any of the following to a child under eighteen years of age . . .
>
> . . .
>
> [a]dminister corporal punishment or other physical disciplinary measure, or physically restrain the child in a cruel manner or for a prolonged period, which punishment, discipline, or restraint is excessive under the circumstances and creates a substantial risk of serious physical harm to the child[.]

{¶ 65} It has been held that

> [i]n evaluating the reasonableness of parental discipline, the totality of the circumstances are to be considered, including factors such as: the age of the child; the child's behavior leading up to the discipline; the child's response to prior non-corporal punishment; the location of the injury; the severity of the punishment; and the parent's state of mind while administering the punishment.

*State v. Triplett*, 2018-Ohio-5405, ¶ 29 (7th Dist.), citing *State v. Rosa*, 2013-Ohio-5867, ¶ 35, 41 (7th Dist.), *abrogated on other grounds*, *State v. Faggs*, 2020-Ohio-523.

{¶ 66} The culpable mental state for child endangerment is recklessness. *State v. Miller*, 2023-Ohio-1141, ¶ 28 (8th Dist.).

> A person acts recklessly when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that such circumstances are likely to exist.

R.C. 2901.22(C).

{¶ 67} Kish raises the same arguments in her sufficiency and weight-of-the evidence assignments of error. Namely, Kish challenges her child endangerment convictions on the grounds that there was no proof of injury and no medical-expert testimony. But neither were required. "Expert medical testimony is not required where the creation of a risk to health or safety is within common knowledge." *State v. Hartley*, 2011-Ohio-2530 ¶ 25 (1st Dist.), citing *State v. Caton*, 137 Ohio App.3d 742 (1st Dist. 2000). Likewise, it is not necessary to show an actual injury or a pattern of physical abuse by the defendant to support a conviction under the statute. *Cleveland Hts. v. Cohen*, 2015-Ohio-1636, ¶ 27 (8th Dist.). Rather, a child endangering conviction may be based on isolated incidents or even a "'single rash decision'" in which a parent puts his or her child's health or safety at risk. *Id.*,

quoting *State v. James*, 2000 Ohio App. LEXIS 5905, *6-7 (12th Dist. Dec. 18, 2000).

{¶ 68} Child endangerment cases are typically fact-specific. *See Beachwood v. Hill*, 2010-Ohio-3313, ¶ 21 (8th Dist.) ("[I]t seems that the outcome of child endangerment cases are highly fact-specific."); *State v. Hughes*, 2009-Ohio-4115, ¶ 34 (3d Dist. ) ("[W]e note that the outcome of this case is intensely fact-specific[.]"). Here, when Kish spoke to Wagner she admitted to "whooping" the children. The record demonstrates that Kish's punishment of the children was excessive, repeated, and reached the point where her conduct created a substantial risk of serious harm to the children. The context of this case, as with any child endangerment case, is important — the children were three-turning-four, five, and six years old during the abuse. And although the State was not required to demonstrate that the children sustained actual injuries, the record shows that they did.

{¶ 69} Specifically, Kish repeatedly beat the children on their thighs, legs, and arms with belts and then would lock them in the basement for extended periods of time. The basement had an unfinished dirt floor and did not have furniture, a bathroom, food, water, or items of comfort for the children. There were mice — dead and alive — and one bit the youngest child. A spider bit the middle child. The two youngest children also reported that Kish threw them across the room.

{¶ 70} Kish's conduct came to light because the children's daycare providers noticed bruising on them — especially after the weekends or periods when they were

not at daycare for a while — and began documenting the injuries. In addition to the physical injuries the children sustained, they were diagnosed with depression and PTSD.

{¶ 71} On this record, the weight of the evidence supports the three child endangerment convictions, which necessarily means that the State presented sufficient evidence for the convictions.

{¶ 72} However, the State failed to present sufficient evidence of retaliation. Under R.C. 2921.05(B), retaliation occurs when an offender, by force or threat of harm, seeks retributory action against a victim of crime because the victim filed or prosecuted criminal charges. The three counts of retaliation here related to Kish telling the children she would beat them after their interviews with Wagner for what she believed were their lies. Kish's conduct was prior to charges being filed against her and therefore cannot be the basis for the retaliation counts. The State concedes the error.

{¶ 73} The second and fourth assignments of error are overruled in part and sustained in part. Sufficient evidence supported the child endangerment convictions and the convictions were not against the manifest weight of the evidence. The State failed to present sufficient evidence to sustain the retaliation convictions. Having found insufficient evidence to sustain the convictions for retaliation, those convictions are vacated. Consequently, we decline review of question of manifest weight because it is moot.

### The Trial Court Was Not Obligated to Order a Presentence-Investigation Report; the Trial Court Made the Required Findings for the Imposition of Consecutive Terms

{¶ 74} Kish raises two issues in her fifth assignment of error. First, she contends that the trial court abused its discretion by denying her request for a presentence-investigation report. Second, she contends that the trial court's imposition of consecutive sentences was contrary to law. We do not find merit to either of Kish's contentions.

{¶ 75} Regarding the denial of Kish's request for a presentence-investigation report, a trial court need not order a presentence report pursuant to Crim.R. 32.2(A) in a felony case when probation is not granted. *State v. Bonner*, 2012-Ohio-2931, ¶ 12 (8th Dist.), citing *State v. Cyrus*, 63 Ohio St.3d 164 (1992), syllabus; R.C. 2951.03. Because the trial court was not imposing community-control sanctions or granting probation, it was not required to order a presentence-investigation report. Further, the trial court did not have a duty to obtain a mitigation-of-penalty report under R.C. 2947.06, which provides that a "trial court *may* hear testimony in mitigation of a sentence . . . ." (Emphasis added.) R.C. 2947.06(A). The section further provides that "[t]he court shall determine whether sentence should immediately be imposed." *Id.*

{¶ 76} Thus, because the trial court imposed a prison term on Kish as opposed to a term of community control or probation, it was not required to obtain a presentence-investigation report, and it was well within its authority to immediately proceed to sentencing.

{¶ 77} Regarding the consecutive nature of Kish's sentence, we review the imposition of consecutive sentences using the standard set forth in R.C. 2953.08. *State v. Shephard*, 2024-Ohio-2010, ¶ 26 (8th Dist.). Under R.C. 2953.08(G)(2), an appellate court can overturn the imposition of consecutive sentences if the appellate court, upon review, clearly and convincingly finds that "'the record does not support the sentencing court's findings'" under R.C. 2929.14(C)(4), or the sentence is "'otherwise contrary to law.'" *Id.*, quoting *State v. Jones*, 2024-Ohio-1083, ¶ 12. "In order to reverse the imposition of consecutive sentences, the defendant must demonstrate that the consecutive sentences are clearly and convincingly not supported by the record. R.C. 2953.08(G)(2)." *State v. Stiver*, 2024-Ohio-65, ¶ 17 (8th Dist.).

{¶ 78} A trial court can impose consecutive sentences by finding that (1) consecutive sentences are necessary to protect the public from future crime or to punish the offender; (2) consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public; and (3) at least one of the following applies: (a) the offender committed one or more of the multiple offenses while awaiting trial or sentencing, while under a sanction, or while under postrelease control for a prior offense; (b) at least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the offenses was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct; or (c) the offender's

history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender. R.C. 2929.14(C)(4).

{¶ 79} To impose consecutive sentences, the trial court must make each finding required under R.C. 2929.14(C)(4) at the sentencing hearing and incorporate those findings into its sentencing journal entry. *State v. Bonnell*, 2014-Ohio-3177, syllabus. A trial court "has no obligation to state reasons to support its findings." *Id.* at ¶ 37. However, a reviewing court must be able to determine from the record evidence to support the trial court's findings. *Id.* at ¶ 29.

{¶ 80} Kish contends that her sentence is contrary to law because the trial court failed to make the required findings. We disagree. The trial court stated the following at the sentencing hearing:

> [A] consecutive sentence is necessary to protect the public from future crimes or to punish the offender. Consecutive sentences are not disproportionate to the seriousness of the offense and to the danger. And I do find that multiple offenses were committed as a part of course of conduct; and that it was great and unusual that no single prison term adequately reflects the seriousness of her conduct.

(Tr. 740-741.)

{¶ 81} According to Kish, the trial court's pronouncement at the sentencing hearing was inadequate because instead of stating the precise language of R.C. 2929.14(C)(4), "that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public," the trial court stated, "Consecutive sentences are not disproportionate to the seriousness of the offense and to the danger." (Tr. 740.) However, it is well

established that "[t]he trial court need not recite the findings verbatim." *State v. Pettus*, 2019-Ohio-2023, ¶ 65 (1st Dist.), citing *Bonnell*, at ¶ 29; *see also State v. Saxon*, 2023-Ohio-306, ¶ 17 (8th Dist.), and *State v. Sheline*, 2019-Ohio-528, ¶ 176 (8th Dist.). Rather, this court "must be able to discern from the record that the court engaged in the requisite analysis and determine that the record contains evidence to support the findings." *Pettus* at *id.*, citing *Bonnell* at *id.*

{¶ 82} Our review of the record demonstrates that the trial court engaged in the required analysis and, further, that the record contains evidence to support the court's findings. Specifically, the trial court noted that, although parents have discretion to punish their children, the punishment that Kish inflicted on the children was "troubling," "clearly illegal; it was clearly against the law." (Tr. 736.) The court noted the children's demeanor when testifying and its belief about "the scarring that you [Kish] have caused them because of these acts." *Id.*

{¶ 83} Further, the trial court imposed consecutive terms on Counts 1, 2, and 3, which were one count of endangering children for each of the three children. This court has repeatedly found "that consecutive sentences are appropriate where there are multiple victims in order to 'hold the defendant accountable for crimes committed against each victim.'" *State v. Akins*, 2025-Ohio-5632, ¶ 54 (8th Dist.), quoting *State v. Thome*, 2017-Ohio-963, ¶ 16 (8th Dist.). For example, in *State v. Sparks*, 2024-Ohio-2362 (8th Dist.), the court found that "[t]he harm suffered by each of the victims clearly factored into the trial court's decision to impose consecutive sentences." *Id.* at ¶ 18. This court held that the existence of multiple

victims supported the trial court's consecutive-sentence findings under R.C. 2929.14(C)(4) with respect to the necessity of punishing the offender as well as "the finding that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public." *Sparks* at ¶ 18-19, citing *State v. Batiste*, 2020-Ohio-3673, ¶ 22 (8th Dist.), and *State v. Sexton*, 2002-Ohio-3617, ¶ 67 (10th Dist.).

{¶ 84} Finally, the trial court incorporated its findings into its sentencing judgment entry as required under *Bonnell*. *See Bonnell* at syllabus.

{¶ 85} The fifth assignment of error is overruled.

{¶ 86} Judgment affirmed in part, reversed in part; case remanded. The child endangering convictions are affirmed. The retaliation convictions (Counts 10 through 12) are vacated. On remand, the trial court shall issue a new judgment of conviction with vacation of the retaliation counts and the sentence on those counts.

It is ordered that appellee and appellant split costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MICHAEL JOHN RYAN, JUDGE

LISA B. FORBES, P.J., and
ANITA LASTER MAYS, J., CONCUR